*State of Maryland v. Marconi Palmer, Jr.*, No. 50, September Term, 2025. Opinion by Eaves, J.

**ALCOHOL-RELATED DRIVING OFFENSES – SUFFICIENCY OF THE EVIDENCE – "NO REASONABLE TRIER OF FACT" STANDARD**

The Supreme Court of Maryland reaffirmed its holding in *Smith v. State*, 415 Md. 174 (2010), that the proper standard in evaluating the sufficiency of the evidence in all criminal cases is the "no reasonable trier of fact" standard, announced by the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Applying the appropriate "no reasonable trier of fact" standard, the Supreme Court held that a reasonable jury could find that the respondent committed the essential elements of driving under the influence of alcohol and driving while impaired by alcohol. Specifically, the State produced evidence that the respondent negligently drove the vehicle involved in a single-vehicle accident, whereby the vehicle veered off a dry roadway and struck a speed-limit sign; and that the respondent exhibited signs of intoxication once law enforcement arrived on the scene, including bloodshot eyes, slurred and lethargic speech, repeatedly asking one police officer for his name, and inconsistently claiming that (1) he had called and was waiting for a tow truck and (2) all he needed to do was inflate a tire and would be on his way.

IN THE SUPREME COURT

OF MARYLAND

No. 50

September Term, 2025

---

STATE OF MARYLAND

v.

MARCONI PALMER, JR.

---

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

---

Opinion by Eaves, J.
Gould, J., concurs.

---

Filed: July 23, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
## INTRODUCTION

In this case, a jury in the Circuit Court for Somerset County convicted the Respondent, Marconi Palmer, Jr., for, among other crimes, driving or attempting to drive a motor vehicle while under the influence of alcohol and driving or attempting to drive a motor vehicle while impaired by alcohol. Mr. Palmer appealed, arguing that there was insufficient evidence to sustain those convictions. The Appellate Court of Maryland agreed, noting that the State failed to present "specific evidence" that Mr. Palmer was intoxicated while he operated the motor vehicle.[1] While the State presented sufficient evidence that Mr. Palmer (1) drove the vehicle in question—even negligently so—and (2) was intoxicated at the scene of the accident once law enforcement arrived, the Appellate Court nevertheless held that the State's evidence was insufficient to bridge those two events to sustain the convictions.[2] The State appealed, and we granted a writ of certiorari in this case[3] to answer the following questions, which we slightly have rephrased:

1. Did the Appellate Court err by requiring the State to present "specific evidence" that Mr. Palmer was under the influence or impaired by alcohol at the time he was driving, rather than relying on rational inferences from the evidence?

---

[1] *Palmer v. State*, 266 Md. App. 693, 722 (2025) (citation omitted).

[2] *Id.* at 722–25.

[3] *State v. Palmer*, 492 Md. 698 (2025).

2. Was there sufficient evidence to sustain Mr. Palmer's convictions for driving or attempting to drive a motor vehicle while under the influence of alcohol and driving or attempting to drive a motor vehicle while impaired by alcohol?

For the reasons discussed more fully below, we hold that the standard for a challenge to the sufficiency of the evidence for a criminal conviction is the same for all criminal cases. To the extent that the Appellate Court's opinion can be read to require a different standard for convictions for alcohol-related driving offenses, we reject that holding. Assessing the record in this case, we hold that the State produced sufficient evidence, so we reverse the judgment of the Appellate Court, reinstating Mr. Palmer's convictions.

**II**
**BACKGROUND**

*A.* *Factual Background*

On September 17, 2022, Mr. Palmer spent the day with his girlfriend, Jessica Lukasz.[4] Ms. Lukasz last saw Mr. Palmer that day around 8:00 p.m. after they parted ways from a barbecue. During their time together at the barbecue, Ms. Lukasz did not see

---

[4] The transcript of the trial testimony contains various spellings of Ms. Lukasz's last name. We settle on Ms. Lukasz because (1) that is how her name is written on various subpoenas throughout the record, (2) that is how her name is written on the State's requested voir dire, listing Ms. Lukasz as a potential witness, and (3) that is how her name is spelled on the record at a September 2023 motions hearing. When Ms. Lukasz testified a trial, she did not spell her name for the record. To the extent we are incorrect about the spelling of Ms. Lukasz's last name, it is unintentional.

Additionally, although Ms. Lukasz testified that she and Mr. Palmer were, at least as of the time of her trial testimony, only dating, she referred to him as her "husband." Ms. Lukasz nevertheless clarified that she and Mr. Palmer are "not legally married[.]" We describe their relationship accordingly.

Mr. Palmer consume alcohol.

Later, at approximately 11:35 p.m., Maryland State Trooper Jacob Barfield responded to the scene of a single-vehicle accident in Somerset County, in the area of Somerset Avenue and Route 822.[5] Maryland State Trooper Logan Bynum, as well as other law enforcement from the Princess Anne Police Department, arrived on scene approximately five minutes later.[6] Upon his arrival, Trooper Barfield observed a silver Kia SUV "completely off the roadway[,]" by approximately 10 feet, in a grassy, wet ditch. A fog line separated the right side of the roadway, which was dry, from the grassy, wet area where the Kia rested. Trooper Barfield noticed that the Kia had struck a nearby speed limit sign, resulting in damage to the Kia and pulling the sign out of the ground. It is unknown what time the accident occurred or for how long the Kia was there prior to law enforcement's arrival. Mr. Palmer, whose identity was not then known to law enforcement, stood approximately 15 feet from the Kia, and there were approximately four to five other people present at the scene, as well as another passenger vehicle parked on the road nearby.

Trooper Barfield asked Mr. Palmer if he was injured or needed medical treatment,

---

[5] Trooper Barfield testified that he arrived at the scene between 9:00 and 10:00 p.m. In a stipulation filed after oral arguments in the Appellate Court of Maryland, the parties indicated that the evidence collectively revealed that Trooper Barfield, in fact, arrived around 11:35 p.m. *Palmer*, 266 Md. App. at 699 n.1.

[6] Trooper Barfield's encounter with Mr. Palmer was captured via a microphone on Trooper Barfield's duty belt that recorded audio; Trooper Barfield also had a camera on the dashboard of his police cruiser. Trooper Bynum's investigation and interactions with Mr. Palmer were recorded via his body-worn camera. Both devices noted the time of those recordings.

and Mr. Palmer confirmed that he did not. Trooper Barfield detected the smell of alcohol on Mr. Palmer's breath and noticed that Mr. Palmer's eyes were bloodshot and glassy and that he had slow and lethargic speech.

During his encounter with law enforcement, Mr. Palmer stated "it was an accident[,] and everything is good, that's how it happened . . . on the road." Mr. Palmer also conveyed both that he planned to "pump up" his tire and depart the scene and that a tow truck was coming to assist him but refused to elaborate further. At one point during their interaction, however, an unidentified individual said, "Hey, Jerry . . . just call, just call a truck." Trooper Barfield specifically noted that during their encounter, Mr. Palmer asked him what Trooper Barfield's name was about four times. At certain points, when Trooper Barfield would explain that he was there to investigate a traffic accident, Mr. Palmer appeared to attempt to explain that he was not engaged in the act of "trafficking." Whenever law enforcement asked Mr. Palmer to provide identification or answer questions, he would refuse and invoke the First and Fifth Amendments of the United States Constitution. At some point, law enforcement learned that Ms. Lukasz was the owner of the Kia. Ms. Lukasz would later confirm that she did not have her car that night, owns only one set of keys to operate her vehicle, and that whoever had the keys would have been operating the vehicle. Mr. Palmer declined to participate in any standard field sobriety tests.

Trooper Barfield subsequently placed Mr. Palmer under arrest for driving under the influence of alcohol. Immediately following this arrest, Trooper Barfield searched Mr. Palmer and discovered a key fob to the Kia in Mr. Palmer's pocket. Around the same

4

time, Trooper Bynum conducted an inventory search of the Kia, as the vehicle was going to be towed to a State storage facility.[7] During that search, Trooper Bynum discovered a card that bore Mr. Palmer's name. Trooper Bynum also discovered a miniature bottle of Fireball liquor outside of, but near, the Kia. Trooper Bynum did not see the bottle of Fireball come out of the Kia.

Law enforcement continued to notice the odor of alcohol on Mr. Palmer as they transported him from the scene of the accident to a nearby barrack. After Mr. Palmer was eventually processed, he was released around 6:00 a.m. the following morning.

### B. *Procedural History*

#### 1. The Circuit Court for Somerset County

In September 2022, Mr. Palmer was charged in the District Court of Maryland sitting in Somerset County with a litany of traffic offenses, including driving or attempting to drive a motor vehicle while under the influence of alcohol and driving or attempting to drive a motor vehicle while impaired by alcohol. Mr. Palmer requested a trial by jury, and the case was subsequently transferred to the Circuit Court for Somerset County.

Mr. Palmer's jury trial took place in October 2023. At trial, the State called Troopers Barfield and Bynum and Ms. Lukasz. Through those individuals, the State elicited testimony consistent with the facts recounted above.

---

[7] Excluding one person, law enforcement did not identify the other individuals present at the scene. As Trooper Barfield explained, because the owner of the vehicle, Ms. Lukasz, was, "to the best of [his] knowledge[,]" not on scene, and because he was "unable to identify [Mr. Palmer] or [Mr. Palmer's] relation to [Ms. Lukasz], [he] had no way to contact or tell [Ms. Lukasz] where [her] vehicle was going."

After the close of the State's case, Mr. Palmer moved for judgment of acquittal as to all charges. The circuit court granted the motion as to certain counts not relevant here but denied the motion as to Counts II (driving or attempting to drive while under the influence of alcohol), III (driving or attempting to drive a vehicle while impaired by alcohol), IV (driving or attempting to drive a motor vehicle on a highway without a required license), VIII (negligent driving), IX (failure of individual driving on a highway to display a license to a uniformed police officer upon demand), XIII (failure to control vehicle speed on a highway to avoid a collision), and XIV (failure to obey designated lane directions).

For its case, the defense called a single witness, Antoinette Cosar, Mr. Palmer's mother. Among other testimony, Ms. Cosar corroborated Ms. Lukasz's testimony that there was only one key to the Kia. At the close of the defense's case, Mr. Palmer, among other legal arguments, renewed his motion for judgment of acquittal, which the circuit court denied.

The jury subsequently convicted Mr. Palmer of all seven remaining counts. As to Count II, the circuit court sentenced Mr. Palmer to five months and twenty-nine days, with credit for thirty-eight days served. On Count IV, the court imposed sixty days consecutive to Count II. All other convictions were merged for purposes of sentencing. Mr. Palmer noted a timely appeal.

### 2. The Appellate Court of Maryland

In a reported opinion, the Appellate Court of Maryland reviewed whether the State presented sufficient evidence to sustain Mr. Palmer's convictions. *Palmer v. State*, 266

6

Md. App. 693, 699 (2025). As relevant for this appeal, the court reversed Mr. Palmer's

convictions for Counts II and III for operating a motor vehicle while under the influence

of and impaired by alcohol, as well as for another count not relevant here, but affirmed

the judgment of the circuit court in other respects, including a conviction for negligent

driving. *Id.*

Concerning the alcohol-related counts, the court unanimously agreed that the

totality of evidence, viewed in the light most favorable to the State, sufficiently supported

a reasonable inference that Mr. Palmer drove the Kia off the roadway and into the ditch

where he first encountered law enforcement. *Id*. at 708–11. The court also unanimously

agreed that no case has "directly explored how such a significant passage of time between

the time of the violation and the time the officers arrived on the scene could affect the

State's burden to prove that the driver was under the influence of alcohol at the time he

was driving the vehicle." *Id.* at 711–12 (citation modified); *see also id.* at 726 (Zic, J.,

concurring and dissenting).

But the panel split over whether the evidence admitted at trial was legally

sufficient to sustain Mr. Palmer's conviction of driving under the influence of or while

impaired by alcohol. *Contrast id*. at 711–24 (majority opinion), *with id.* at 728–731 (Zic,

J., concurring and dissenting). Concluding that it did not, the court held:

> The mere fact that [Mr. Palmer] was found under the influence of alcohol at
> the scene of a single-vehicle accident does not support a finding that he was
> under the influence of alcohol *at the time he drove the vehicle*. To prove a
> critical element of the crime, *the State needed to offer specific evidence that
> [Mr. Palmer] was under the influence or impaired at the time [he] was
> driving*.

7

*Id.* at 721–22 (majority opinion) (emphases added) (citation modified).

In reaching that conclusion, the court relied on a previous opinion from this Court, *Thomas v. State*, 277 Md. 314 (1976). *Palmer*, 266 Md. App. at 708–13. The court further examined case law from other jurisdictions, including *State v. Sanford*, 108 A.2d 516 (Vt. 1954), a case cited with approval by us in *Thomas*, as well as case law from Missouri and Texas. *Palmer*, 266 Md. App. at 713–22. The court ultimately embraced the approach adopted by Missouri, finding its approach "analytically more persuasive[]" because it focuses on "the 'temporal connection between [a] defendant's last operation of a motor vehicle and [their] observed intoxication.'" *Id.* at 721 (quoting *State v. Hatfield*, 351 S.W.3d 774, 780 (Mo. Ct. App. 2011)). The Appellate Court concluded that the Missouri approach is "more consistent with the underpinnings of [this] Court's decision in *Thomas*, particularly in light of the *Thomas* Court's citation of *Sanford* with approval." *Id.* at 721.

In the Appellate Court's view, the State "established only that [Mr. Palmer] drove the Kia and that he was under the influence of alcohol when the police arrived at the scene. The State failed to present any evidence as to when [Mr. Palmer] began drinking or how much alcohol he consumed[,]" failing to account for the 3.5-hour gap between the time Mr. Palmer was last seen and the time officers arrived on the scene of the accident. *Id.* at 722.

The Honorable Terrence M. R. Zic saw the matter differently. He concluded that there was sufficient evidence for the jury to rationally infer that Mr. Palmer drove the Kia while under the influence of alcohol. *Id*. at 726–31 (Zic, J., concurring and dissenting).

8

Judge Zic reasoned that *Thomas*, and its reliance on the Supreme Court of Vermont's opinion in *Sanford*, proved inapplicable to the facts in the case at hand. *Id*. at 728. Specifically, Judge Zic emphasized that a "significant difference in evidentiary standards" existed between the standard employed in *Sanford*, which, at the time we decided *Thomas*, was the same, and the current state of the law in Maryland. *Id*. at 727.

Judge Zic instead turned to Maryland case law and believed that Mr. Palmer's case was more analogous to, among other cases, *Gore v. State*, 74 Md. App. 143 (1988), *Dukes v. State*, 178 Md. App. 38 (2008), and *Harding v. State*, 223 Md. App. 289 (2015). *Palmer*, 266 Md. App. at 728–31 (Zic, J., concurring and dissenting). Judge Zic concluded:

> Similarly to *Gore* and *Dukes*, there is no direct evidence in the record of when the vehicle [in Mr. Palmer's case] had been driven. Unlike those cases, however, we do know that the accident occurred within an approximate window of three-and-a-half hours. While the time gap, and the bottle of Fireball whiskey found at the scene, make it possible that Mr. Palmer became intoxicated after the accident, . . . it is a question for the jury to resolve. If the evidence was sufficient to support a conviction when the State presented no evidence of a specific timeline, then certainly the evidence should be sufficient to permit the jury to consider the possibility that Mr. Palmer was driving under the influence of alcohol when the State presented evidence to support a time gap of, at most, three-and-a-half hours. The inference that Mr. Palmer was under the influence of alcohol while driving need only be reasonable and possible; it need not be necessary or inescapable.

*Id.* at 730–31 (citation modified).

### III
### STANDARD OF REVIEW

Maryland appellate courts apply a deferential standard when reviewing questions of evidentiary sufficiency that asks whether any rational trier of fact could have found the

9

essential elements of the crime beyond a reasonable doubt when viewing the evidence and inferences drawn from that evidence in the light most favorable to the State. *Smith v. State*, 415 Md. 174, 184 (2010). We neither reweigh the record so as to engage in a retrial of the case nor answer whether the State has proved guilt beyond a reasonable doubt. *Nguyen v. State*, 492 Md. 179, 197–98 (2025).

**IV**
**ANALYSIS**

At trial, the State was required to present sufficient evidence—direct, circumstantial, or a combination of the two—for a rational jury to conclude that Mr. Palmer drove the Kia while intoxicated. The Appellate Court erred when it concluded that the State had not presented sufficient evidence for a rational jury to find the essential elements of the crimes for which Mr. Palmer was convicted, i.e., that Mr. Palmer drove the vehicle while (1) under the influence of alcohol and (2) impaired by alcohol. For the reasons articulated more fully below, we reverse the judgment of the Appellate Court.

**A.** ***The Standard Applicable to This Case Is the Same Standard Applicable in All Criminal Cases***

The State argues that, in the wake of the Supreme Court of the United States' decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), we adopted in *Smith* the *Jackson* standard—our current standard—for evaluating whether a criminal conviction rests on sufficient evidence. A standard, the State argues, that is equally applicable to cases that rest on direct or circumstantial evidence (or any combination thereof). The State interprets the Appellate Court to have deviated from that standard by requiring the State to come forth with "specific evidence" that Mr. Palmer drove while intoxicated. The

10

State argues that the Appellate Court adopted an "idiosyncratic, heightened standard of review that is irreconcilable with . . . *Smith*." As the State sees it, the Appellate Court's standard "is tantamount to a requirement that the State adduce direct evidence in DUI and DWI cases[]" and an attempt to resurrect a pre-*Smith* sufficiency standard.

Mr. Palmer concedes that *Smith*'s adoption of the *Jackson* standard is controlling and circumstantial evidence holds just as much weight as direct evidence. And he argues that the Appellate Court here recognized both of those principles. After discussing the differences between permissible rational inferences and impermissible conjecture in cases involving circumstantial evidence, Mr. Palmer concludes that the Appellate Court's opinion "simply recognizes that the State may not rely on an assumption that a person drove drunk in cases where police come upon an intoxicated person at the scene of an accident, when the accident may have happened hours prior." Rather than a requirement that the State produce direct evidence that a defendant drove while intoxicated, Mr. Palmer reads the Appellate Court's "specific evidence" language as simply saying that "the State need[ed] to offer evidence *specific* to the temporal connection" of the state of intoxication and the act of driving and that "the State need[ed] *more* circumstantial evidence."

We hold that the standard for sufficiency under Maryland law is no different for cases involving the operation of a motor vehicle while under the influence of, or impaired by, alcohol, than for any other case. The *Jackson-Smith* framework applies and treats circumstantial evidence the same as direct evidence. We take this opportunity to clarify that the *Jackson-Smith* framework is applicable to this class of cases just as with others.

To the extent that the Appellate Court's use of the phrase "specific evidence" could be interpreted to require the production of direct evidence, we also take this opportunity to clarify that there is no such requirement.

### 1. The *Jackson-Smith* framework and circumstantial evidence

In *Jackson*, the Supreme Court of the United States noted that its prior decision in *In re Winship*, 397 U.S. 358 (1970), held that, under the Fourteenth Amendment, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." 443 U.S. at 316. The Court in *Jackson* held that, "[a]fter *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. That task does not require a court to ask whether it "believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 319 (citation omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted).

In *Smith*, we clarified that the "any rational trier of fact" standard announced in *Jackson* "applie[d] to all criminal cases, regardless of whether the conviction rests upon direct evidence, a mixture of direct and circumstantial, or circumstantial evidence alone." 415 Md. at 185. That clarification was necessary because, as our opinion noted, post-

*Jackson* decisions from this Court oscillated between the *Jackson* standard and an earlier iteration of the appropriate standard for sufficiency challenges in cases that rested entirely on circumstantial evidence: the "reasonable hypothesis of innocence" standard. *Contrast Allen v. State*, 402 Md. 59, 76–77 (2007) ("[W]e review a challenge to the sufficiency of the evidence in a jury trial by determining whether the evidence, viewed in a light most favorable to the [State], supported the conviction of [the defendant], such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (citation omitted)), *with Jones v. State*, 395 Md. 97, 120 (2006) ("[A] conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence." (citation omitted)). The Supreme Court had specifically rejected the "reasonable hypothesis of innocence" standard even before *Jackson*. *See Holland v. United States*, 348 U.S. 121, 139–40 (1954) (holding that an instruction to the jury "that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt[]" is "confusing and incorrect[]" because "[c]ircumstantial evidence . . . is intrinsically no different from testimonial evidence[]").

When reviewing the conclusion of a factfinder, we do not delineate between direct and circumstantial evidence because "generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts." *State v. Smith*, 374 Md. 527, 534 (2003) (citation omitted). Thus, no matter the offense, the State may secure a conviction based solely on circumstantial evidence where it permits a factfinder's rational inference of the defendant's guilt beyond a reasonable

doubt. *Taylor v. State*, 346 Md. 452, 458 (1997) ("A conviction can rest on circumstantial evidence alone.").

Where the evidence supports competing rational inferences, it is the role of the factfinder, not an appellate court, to decide which inference to draw. *Smith*, 415 Md. at 185 ("[W]e do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence."). We have stated that "[a]n inference is a factual conclusion that can rationally be drawn from other facts." *Id.* at 183 (alteration in original) (quoting Clifford S. Fishman, *Jones on Evidence* § 4:1 (7th ed. 1992 & Supp. 2009–2010)). In other words, "[i]f fact A rationally supports the conclusion that fact B is also true, then B may be inferred from A." *Id.* (citation omitted).

The key word is "rational." Our cases have long acknowledged that circumstantial evidence permits a factfinder to make rational inferences—not impermissible conjecture. *See Taylor*, 346 Md. at 458 (noting that circumstantial evidence that "merely arouses suspicion or leaves room for conjecture is obviously insufficient. It must do more than raise the possibility or even the probability of guilt[]" (quoting 1 Underhill, Criminal Evidence § 17, at 29 (6th ed. 1973))); *Bible v. State*, 411 Md. 138, 157 (2009) ("[W]hen the evidence equally supports two versions of events, and a finding of guilt requires speculation as to which of the two versions is correct, a conviction cannot be sustained." (quoting *Taylor*, 346 Md. at 458)); *cf. Benedick v. Potts*, 88 Md. 52, 55 (1898) ("Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. But this inference must, after all, be a legitimate inference and not a mere speculation or conjecture. There must be a logical relation and connection

between the circumstances proved and the conclusion sought to be adduced from them.").

And, as our case law has made clear, a rational inference does not become mere conjecture simply because it does not negate every conceivable innocent explanation. *See, e.g.*, *Carroll v. State*, 428 Md. 679, 685–86 n.1, 690 (2012) (holding that the trial court's use of the pattern jury instruction on the State's burden of proof, which notes that the State is not "required to negate every conceivable circumstance of innocence[,]" in conjunction with the instruction that the State "must prove" each offense, was sufficient to adequately instruct the jury); *Smith*, 374 Md. at 534 (noting a factfinder's "ability to choose among differing inferences that might possibly be made from a factual situation" and that deference is owed "to the inferences a fact-finder may draw[]" (citing *Jackson*, 443 U.S. at 319)). If that were so, then the State would need to prove criminal liability conclusively, rather than beyond a reasonable doubt, resurrecting our now-abandoned "reasonable hypothesis of innocence" standard. *See, e.g.*, *Shelton v. State*, 198 Md. 405, 412 (1951) ("Before a verdict of guilty is justified, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence." (citations omitted)).

With these principles in mind, we turn to the Appellate Court's opinion.

**2. A requirement to produce direct evidence would be at odds with the *Jackson-Smith* framework because it creates a heightened burden for the State in cases relying on circumstantial evidence**

Although we do not interpret the Appellate Court's opinion, and its use of the phrase "specific evidence," as the State does, we do not adopt that language, which could be interpreted to harken back to the "reasonable hypothesis of innocence" standard,

which is at odds with the *Jackson-Smith* framework and our equal treatment of circumstantial evidence.

The Appellate Court correctly cited the governing standards and principles in its opinion. *Palmer*, 266 Md. App. at 707–08. But its use of "specific evidence" to describe what the State is required to prove in cases like Mr. Palmer's has led to the present dispute about what that phrase means in this context. We discuss the cases relied upon by the Appellate Court.

In *State v. Sanford*, the Vermont Supreme Court reversed a conviction for operating a motor vehicle under the influence of alcohol. 108 A.2d 516, 517 (Vt. 1954). There, law enforcement responded to a scene where a vehicle's front wheels had driven off the left side of the road, with the rear left wheel in a ditch and where the right rear wheel "had gouged out the surface of the road to a depth of two or three inches[.]" *Id.* at 516. The defendant was found asleep in the front seat "with his buttocks under the steering wheel and his head on the seat near the right hand door[;]" police also found both full and empty beer bottles on the floor of the car. *Id.* at 517.

Under Vermont's standard at the time of *Sanford*, the State carried the burden of negating "every reasonable hypothesis except that the [defendant] is guilty" when relying solely on circumstantial evidence. *Id.* at 517 (citations omitted).[8] Because there was no direct evidence that the defendant had consumed alcohol and then operated his vehicle, nor any evidence regarding the length of time he had been on the side of the road after the

---

[8] *See State v. Derouchie*, 440 A.2d 146, 150 (Vt. 1981) (explaining that Vermont would "now join" the jurisdictions that have abandoned the "reasonable hypothesis of innocence" standard).

vehicle stopped running, the evidence left "it a matter of conjecture as to whether he was under the influence of intoxicating liquor when he operated his car, and is not so cogent as to exclude every reasonable theory consistent with his innocence." *Id.* Thus, reversal was required. *Id.*

In *Thomas*, we held that the State had not presented sufficient evidence to sustain the defendant's conviction for driving or attempting to drive a motor vehicle under the influence of alcohol. 277 Md. at 315. There, an officer happened upon the defendant, who appeared to be asleep or passed out in the front seat of his vehicle with the keys in the ignition but the vehicle off. *Id.* After the officer tapped on the defendant's window, the defendant had trouble locating the window and door handles, smelled of alcohol, staggered once out of the vehicle, slurred his speech, and appeared disoriented. *Id.* at 316. To highlight what would satisfy the State's burden of proof in a case such as this, we discussed various cases from other jurisdictions, including *Sanford*. *Id.* at 320–25. We held:

> All the evidence in this case proves is that [the defendant] was in a vehicle by the side of a road, possibly intoxicated, at an early hour in the morning. Left to conjecture is whether he drove the vehicle to that location after imbibing alcohol or whether he had parked it there, been picked up by some other individual, and then dropped off at the same spot as was done in *Poling*. We do not know how long [the defendant] had been at this location. Also left to conjecture is whether the vehicle was operable. We may suspect that [the defendant] did not drop down from outer space into the vehicle in question, that he drove the vehicle to that location, and that when he drove it he was under the influence of alcohol. . . . In this instance [the State] has utterly failed to prove the *corpus delicti* of the crime, that [the defendant] drove the vehicle on a public highway while his driving ability was impaired by alcohol. In fact, [the State] has yet to prove that he drove the vehicle. Thus, the conviction must be reversed.

*Id.* at 325–26.

To be sure, our citation to *Sanford* in *Thomas* emphasized the State's need to provide evidence that established a defendant was intoxicated while driving and invoked the "reasonable hypothesis of innocence" standard. Critically, however, at the time we decided *Thomas*, the relevant law prohibited driving, attempting to drive, or being in "actual physical control" of a vehicle while influenced by alcohol. *Id.* at 315. While the State argued that the defendant was in actual physical control of the vehicle, we noted that the State had not charged the defendant with that act. *Id.* at 317. Thus, the conviction was reversed because there was no evidence that the defendant drove the vehicle at all. *Id.* at 325 ("All the evidence in this case proves is that [the defendant] was in a vehicle by the side of a road, possibly intoxicated, at an early hour in the morning.").

The Appellate Court next turned to two cases from the Missouri Court of Appeals: *State v. Byron*, 222 S.W.3d 338 (Mo. Ct. App. 2007) (per curiam), and *State v. Hatfield*, 351 S.W.3d 774 (Mo. Ct. App. 2011). *Palmer*, 266 Md. App. at 715–19. We discuss those cases in turn. In *Byron*, the Missouri Court of Appeals reversed the defendant's conviction for driving while intoxicated. 222 S.W.3d at 339. There, law enforcement responded to a 9-1-1 call at 1:45 a.m., indicating that a single-car accident had occurred in a construction zone. *Id.* The responding officer had previously been patrolling that same area as early as 12:40 a.m. and did not report seeing any accident. *Id.* When police arrived, the vehicle was unoccupied, but it had been driven over several tall traffic cones, and part of the car was hanging over the edge of the road because there currently was no shoulder. *Id.* The individual who called 9-1-1 also inspected the vehicle and saw no

18

driver. *Id.* Police searched for the vehicle's registration information and discovered that it belonged to the defendant. *Id.*

Around 2:00 a.m., law enforcement went to the defendant's home. *Id.* at 339–40. The defendant smelled of alcohol, had bloodshot eyes, slurred his speech, exhibited trouble with balance, and had mud on his pants consistent with the area in which his vehicle was located. *Id.* at 340. The defendant denied knowing anything about the accident, claiming that his father had borrowed his vehicle. *Id.* The defendant's father denied borrowing the car and informed officers that the defendant had called him asking him (the father) to pick up the defendant because he had just been in an accident. *Id.* The father indicated that he picked up the defendant at a "Food 4 Less" about one-quarter mile from the scene of the accident. *Id.* The father took the defendant home and told officers that he did not believe the defendant to be intoxicated at that time. *Id.* They were together about 20 minutes. *Id.* Law enforcement eventually arrested the defendant for leaving the scene of an accident; a search incident to arrest revealed the keys to the crashed vehicle and a pair of muddy shoes that matched a footprint at the scene of the accident. *Id.* The defendant subsequently performed and failed standard field sobriety tests. *Id.*

On appeal challenging the sufficiency of his conviction, the Missouri Court of Appeals indicated that the standard of review was whether a reasonable juror could find the defendant guilty beyond a reasonable doubt. *Id.* at 340–41. The court began its analysis noting that, "[g]enerally, when there is a significant interval of time between the time of an accident and the time that the defendant is observed to be intoxicated, the

prosecution must offer *specific evidence* that the defendant was intoxicated at the time the defendant was driving." *Id.* at 341 (emphasis added). Under preexisting case law, the court noted that "an interval of less than thirty minutes between the accident and the observation of the driver's lack of sobriety tend[ed] to show intoxication at the time of driving." *Id.* at 341–42. Evaluating the evidence, the court stated:

> The only testimony concerning [the defendant's] condition immediately after the accident was from [the defendant's] father. Although the jury was free to disbelieve the father's testimony that [the defendant] was sober at that time, there is no other testimony as to [the defendant's] condition after the accident up until the time the officers found him at his home.
>
> There was no evidence that [the defendant] did *not* obtain alcohol at the Food 4 Less and consume it in the relevant time interval.
>
> \*      \*      \*
>
> [The defendant's] accident occurred sometime after 12:40 a.m. and prior to 1:45 a.m. Even if the jury entirely rejected all of the testimony of [the defendant's] father, as to picking him up at the Food 4 Less, we still have the fact that [the defendant] was not contacted by officers at the accident scene, but was contacted at his home at around 2:00 a.m., perhaps as much as an hour and twenty minutes after the accident.

*Id.* at 342–43 (citations omitted). While recognizing that this was a "close" case because of the timing, the court ultimately held that the State encountered problems with the "forty-minute-or-more interval between the accident and the contact with officers[]" and "the fact that [the defendant] had access to alcohol[.]" *Id.* at 343. Although the court recognized that it was required to draw reasonable inferences in the State's favor, the court simply believed that "there [was] no particular inference one way or another about whether [the defendant] acquired additional alcohol at the Food 4 Less or anywhere

20

else[,]" requiring reversal. *Id.*

In *Hatfield*, the Missouri Court of Appeals also reversed a conviction for driving while intoxicated. 351 S.W.3d at 775. There, law enforcement responded to an accident where they observed the defendant's vehicle "parked in the driveway of a home with a damaged front end, rut marks in a ditch next to the vehicle, a damaged fence near the car, and [the defendant] standing outside the vehicle." *Id*. at 775–76. The defendant, who had alcohol on his breath and appeared intoxicated, told law enforcement that he lost control of the vehicle while making a turn. *Id.* at 776. A jury subsequently convicted the defendant of driving under the influence. *Id.*

On appeal, the defendant conceded that the evidence established that he drove the vehicle before law enforcement arrived and that, once law enforcement did arrive, he was intoxicated. *Id.* at 777. The defendant argued only that there was insufficient evidence that he operated the vehicle while intoxicated. *Id.* The court agreed, holding that the defendant's "mere intoxication near his vehicle, without evidence establishing when he last operated it, is insufficient to support his conviction for driving while intoxicated." *Id.* at 778. It noted that where intoxication and operation of a vehicle are observed separately, "a factfinder cannot determine that one who is under the influence of an alcoholic beverage at an established time was necessarily in that condition at some earlier unspecified moment without any evidence concerning the length of the interval involved." *Id.* (citation modified). A conviction for operating a vehicle while intoxicated, the court noted, "cannot be sustained where the State fails to present evidence to support the inference that the defendant's intoxication was observed within a reasonable period of

21

time following the defendant's operation of a motor vehicle, and that the defendant did not become intoxicated in the interim." *Id.*

The court noted that the "evidence . . . established only that [the defendant] drove the vehicle . . . at the time of the accident and that he was intoxicated when [police] arrived." *Id.* at 780. There was "no evidence as to the approximate time that [the defendant] was operating the vehicle or the time the accident occurred, or how much time elapsed between the accident and the arrest." *Id.* (citation modified). The court highlighted that there was no evidence relating to the nature of the turn where the accident occurred, the speed limit, signage, the presence or absence of skid marks, the extent of damage to the vehicle or fence, the length or depth of the ruts in a ditch near where the vehicle came to rest, or the potential age of the ruts. *Id.* The court also noted that the State failed to "introduce any evidence establishing whether [the defendant] had access to alcohol at or near the scene of the accident." *Id.* (citation omitted).

The court concluded by explaining that "[g]iven the absence of evidence to show the approximate time of [the defendant's] accident, when he last consumed alcohol, or whether any alcohol was available at or near the scene, we cannot say that the evidence was sufficient to permit a reasonable juror to find [the defendant] guilty of driving while intoxicated beyond a reasonable doubt." *Id*. at 782.

Returning to the present case, the Appellate Court ultimately concluded that the Missouri cases and their "specific evidence" requirement were "analytically more persuasive[]" and "more consistent with the underpinnings of [this] . . . Court's decision in *Thomas*, particularly in light of the *Thomas* Court's citation of *Sanford* with approval."

22

*Palmer*, 266 Md. App. at 721. We disagree with those conclusions and find no need to look beyond Maryland case law to resolve the present appeal.

First, *Sanford* and *Thomas* were decided at a time when both Courts used the "reasonable hypothesis of innocence" standard. So, their persuasive authority is—at best—questionable.[9] Thus, if the Missouri cases, *Byron* and *Hatfield*, were analytically more akin to *Sanford* and *Thomas* concerning the applicable sufficiency standard, that is not a reason to embrace them.

Second, although the Missouri cases purport to apply the *Jackson* framework, *see Byron*, 222 S.W.3d at 340–41; *Hatfield*, 351 S.W.3d at 776, we find their analyses to be more reminiscent of the "reasonable hypothesis of innocence" standard and encroaching upon the reasonable inferences we permit factfinders to draw from circumstantial evidence. For example, in *Byron*, the court noted that "an interval of less than [30] minutes between the accident and the observation of the driver's lack of sobriety tends to show intoxication at the time of driving." 222 S.W.3d at 341–42 (citing *State v. Johnston*,

---

[9] Mr. Palmer argues that it "does not logically follow that all cases that preceded *Smith*[,] which include reasonable-hypothesis-of-innocence language[,] lose all their analytical value because the evidence in many of those cases would still be deemed insufficient under the *Jackson* standard." Perhaps. In a case where the State prevailed under the more stringent "reasonable hypothesis of innocence" standard, we can assume that the evidence also would have surpassed the more lenient "no reasonable trier of fact" standard. That assumption is, however, a one-way street. In other words, that the State failed to satisfy the "reasonable hypothesis of innocence" standard in a case tells us nothing about how it would have fared under the "no reasonable trier of fact" standard. Thus, such cases do not aid Mr. Palmer because we decline to revisit older cases, apply a different evidentiary standard to those cases' facts, and conclude whether those cases would have come out differently under our current standard. Such practice would be to render advisory opinions, something we typically avoid. *See Polakoff v. Hampton*, 148 Md. App. 13, 39 (2002) (noting that appellate courts do not render advisory opinions "on a set of hypothetical, abstract, and necessarily incomplete facts[]").

670 S.W.2d 552, 556–57 (Mo. Ct. App. 1984)). It is unclear under Missouri law whether that 30-minute interval is a bright-line rule, prohibiting a Missouri factfinder from inferring that an individual drove an automobile intoxicated when the evidence discloses that there were more than 30 minutes between the time of the accident and the witnessing of a defendant's intoxicated state. If that is the case, then such a bright-line rule sits at odds with Maryland jurisprudence and the inferences we permit factfinders to draw.

In both cases, the court's analysis essentially required the State to negate any innocent explanation for the respective conduct, which is inconsistent with our case law. *See Carroll*, 428 Md. at 685–86 n.1; *Smith*, 415 Md. at 185. For example, the court in each case found detrimental to Missouri's case-in-chief that there was no evidence concerning whether the respective defendant had access to alcohol in the time between the accident and law enforcement's encounter with the defendants in their intoxicated states. *Byron*, 222 S.W.3d at 342–43; *Hatfield*, 351 S.W.3d at 782. And, in *Byron*, the court went further, noting that, even if the jury disbelieved the defendant's father's testimony regarding the state of the defendant prior to the police arriving, "there is *no other testimony* as to [the defendant's] condition after the accident up until the time the officers found him at his home[,]" which was roughly one hour and twenty minutes after the accident. 222 S.W.3d at 342–43 (emphasis added). The court in *Byron*, thus, held that it was impermissible for a jury to infer—even if it found a witness to the contrary to be lying—that an individual, who was clearly intoxicated in police presence, to have crashed their own vehicle in an intoxicated state no more than one hour and twenty minutes prior to their interaction with the police. *Id.* at 343–44. Such a holding employs the "reasonable

hypothesis of innocence" standard in practice if not in name.

Third, given the clarity of the *Jackson-Smith* framework as applied to direct and circumstantial evidence, a reference to "specific evidence" creates unnecessary confusion. To be sure, by holding that the State needed to "offer specific evidence that the defendant was under the influence or impaired at the time the defendant was driving" the Appellate Court did not state that it was requiring the State to produce direct evidence in cases charging alcohol-related driving offenses. *Palmer*, 266 Md. App. at 722 (citation modified). One could read the Appellate Court's opinion, as Mr. Palmer suggests, to do no more than say that the State needed to produce *more* circumstantial evidence as to the specific element of the offense that he was intoxicated while he drove.[10] But we think it better, and less likely to lead to confusion, to adhere to the same test that we apply to all

---

[10] On this point, Mr. Palmer offers an inapt example. Mr. Palmer poses a hypothetical where the State produces evidence that an individual enters the courthouse with a dripping umbrella at 1:00 p.m. and argues that it has proved beyond a reasonable doubt that it was raining at 10:00 a.m. that same day. Mr. Palmer asserts that it would be absurd to say that the State has produced evidence beyond a reasonable doubt that it was raining at 10:00 a.m.; rather, the State would need to produce more evidence to that effect, such as eyewitness testimony that it was indeed raining at 10:00 a.m., testimony from a custodian that they mopped up wet footprints around 10:00 a.m., or testimony from others that they heard thunder around 10:00 a.m. On this we agree. But to the extent that Mr. Palmer believes his hypothetical is an appropriate representation of his case, we disagree.

In Mr. Palmer's hypothetical, he asserts that the State needs to prove that it was raining at 10:00 a.m.—a concrete fact at a specific time. Extrapolated onto the facts of this case, that would mean that the State needs to prove that Mr. Palmer drove while intoxicated at 8:00 p.m. (assuming Mr. Palmer intends the 3-hour gap in his hypothetical to substitute for the 3.5-hour gap in his case). It does not. Mr. Palmer's driving occurred at some time between 8:00 p.m. and 11:30 p.m., and the State was required to prove that Mr. Palmer was intoxicated at the time he drove, whatever time that may have been.

other criminal cases.[11]

Our case law is clear that direct and circumstantial evidence are to be treated equally and that factfinders can make reasonable inferences, not impermissible conjecture. We do not require a factfinder to rely on a particularized category of temporal evidence when determining if a defendant was intoxicated while driving. Instead, to attain a conviction, the State simply needs to produce evidence that permitted a factfinder to rationally infer that a defendant was intoxicated when they drove their vehicle. Those are the only principles that are relevant.

Fourth, we agree with the State that a "specific evidence" standard, if understood to require more than circumstantial evidence, could undermine public safety because a "heightened evidentiary sufficiency standard . . . threatens the State's ability to prosecute [alcohol-related driving offenses] and combat the public-safety scourge of drunk driving." We agree with the State that, in most single-vehicle accident cases, the State

---

[11] To the extent that the Appellate Court viewed Mr. Palmer's case as an issue of first impression, *see Palmer*, 266 Md. App. at 711–12 ("No Maryland case has directly explored how such a significant passage of time between the time of the violation and the time the officers arrived on the scene could affect the State's burden to prove that the driver was under the influence of alcohol at the time he was driving the vehicle." (citation modified)), we disagree. That there may not be a case with an identical *fact pattern* does not make a case an issue of first impression. *See Case of first impression*, Black's Law Dictionary (12th ed. 2024) ("A case that presents the court with an *issue of law* that has not previously been decided by any controlling legal authority in that jurisdiction." (emphasis added)). Neither the State's burden in a criminal case nor our equal treatment of direct and circumstantial evidence change simply because the State is confronted with a temporal gap between two actions that must converge (driving and a state of intoxication) to become a criminal act. For that reason, we do not engage with Mr. Palmer's detailed discussion of case law from other States and how those States might decide a fact pattern similar to his, as we believe Maryland law adequately answers the question.

26

would be unable to present "specific evidence" as to precisely when an accident occurred and when a defendant became intoxicated. That inability "should not negate the factfinder's ability to draw common-sense, rational inferences from the evidence nor the State's ability to hold the driver accountable for criminally dangerous conduct." We have consistently held that Maryland's various statutes aimed at combatting drunk driving "were enacted for the protection of the public[,]" *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 464 (1991) (citing *State v. Moon*, 291 Md. 463, 477 (1981)), and "to enhance the ability of [the State] to deal effectively with the drunk driver problem[,]" *id.* (quoting *Willis v. State*, 302 Md. 363, 370 (1985)).

In sum, we affirm our adherence to the *Jackson-Smith* framework for evaluating the sufficiency of the evidence for a criminal conviction. When reviewing the sufficiency of the evidence in a criminal case, "the relevant question is whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

**B.     *The Evidence Was Sufficient to Support Mr. Palmer's Convictions***

As to the underlying merits, the State argues that it produced sufficient evidence such that a reasonable factfinder could conclude that Mr. Palmer drove his vehicle while intoxicated. In the State's view, there was a permissible inferential chain that the jury could have followed from one step to the next: (1) because Mr. Palmer drove the vehicle, which, (2) given its position and status, was driven in a negligent manner and crashed, the jury could infer that (3) Mr. Palmer crashed the vehicle; and because (4) Mr. Palmer was

27

intoxicated on the scene of the accident, the jury could infer (5) that Mr. Palmer previously drove his vehicle in an intoxicated state. According to the State, the exact time of the accident is not an element of the offense, and what occurred within the 3.5-hour window between the time Mr. Palmer was last seen by Ms. Lukasz and the time police observed him on the scene of the accident represented a question for the jury to resolve. That is, it was for the jury to decide "[t]he significance of the window of time Mr. Palmer had to reach the degree of intoxication he displayed on the video[.]" While the State concedes that the jury was free to accept that "Mr. Palmer crashed the car into a traffic sign while stone-cold sober and only then decided to drink himself to intoxication while waiting for police to arrive[,]" it argues that the jury otherwise was equally free to "rationally infer that, to the contrary, Mr. Palmer drove the vehicle while drunk."

In Mr. Palmer's view, the State failed to "elicit any circumstantial evidence that could have strengthened the inference" that the State was "asking the factfinder to make." As Mr. Palmer sees it, the State "failed to elicit any evidence to establish when the accident occurred within a 3.5-hour period[,]" and otherwise failed to offer evidence that could have temporally connected his alleged simultaneous state of intoxication and his driving of the vehicle. Specifically, Mr. Palmer argues that the position of the vehicle does not lend itself to the inference that someone who was intoxicated drove the vehicle and could be subject to any number of innocent explanations, such as "getting a flat tire, texting, swerving to avoid hitting an animal, or falling asleep[.]" And, Mr. Palmer continues, there is evidence that he had access to alcohol (the bottle of Fireball) at the scene of the accident and knew the other individuals at the scene, who could have

28

supplied him with alcohol, "which undercuts the inference that[] . . . he must have been drunk before driving." Lastly, Mr. Palmer asserts that, because the State provided no evidence regarding his "actual level of intoxication[,]" the jury is foreclosed from inferring that he was drinking "for a longer period."

Mr. Palmer's position would require the State, to secure a conviction for offenses related to drinking and driving, to bring a perfect case rather than a sufficient case. We decline to impose that burden upon the State and instead hold that the evidence in this case was sufficient for a reasonable factfinder to find the essential elements of the crime beyond a reasonable doubt.

Mr. Palmer challenges his convictions under §§ 21-902(a)(1)(i) and 21-902(b)(1)(i) of the Transportation Article ("TR") of the Maryland Annotated Code. Those sections state, respectively, that "[a] person may not drive or attempt to drive any vehicle while under the influence of alcohol[;]" and "[a] person may not drive or attempt to drive any vehicle while impaired by alcohol."

We reiterate that "[i]t is not the province of an appellate court to retry the case; rather, we review the evidence and all inferences in a light most favorable to the State." *Allen*, 402 Md. at 77 (citing *Rivers v. State*, 393 Md. 569, 578–81 (2006)). And that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). With that standard in mind, we easily conclude that a rational

29

factfinder could have found the essential elements of the crime beyond a reasonable doubt.

To review, the vehicle here veered off of a dry roadway, with demarcating fog lines, and struck a sign, pulling that sign from the ground and causing damage to the vehicle. The only key to the vehicle was in Mr. Palmer's pocket. Mr. Palmer displayed signs of intoxication, such as bloodshot eyes, slurred speech, repeatedly asking Trooper Barfield what his name was, and providing inconsistent explanations as to the status of the vehicle (waiting for a tow truck versus simply needing to inflate a tire). Mr. Palmer also generally displayed an aggressive and uncooperative behavior. That is certainly enough for the jury to conclude—as it did, which remains uncontested in this appeal— that Mr. Palmer was the driver of the vehicle, which was driven in a negligent manner, and that he was intoxicated when law enforcement arrived.

That leaves the critical inquiry: Whether Mr. Palmer's negligent driving can be attributed to driving *while* intoxicated. For that question, too, we find that the State presented sufficient evidence for a rational factfinder to infer that Mr. Palmer so acted. The jury knew that the accident had to have occurred sometime between 8:00 p.m. and roughly 11:30 p.m. While Ms. Lukasz testified that she did not see Mr. Palmer consume alcohol while at the barbecue together, the jury was free to give that testimony any weight it deemed appropriate, including none at all. After Mr. Palmer's departure from the barbecue, the jury had no direct evidence as to what occurred, but that does not mean that the jury simply must throw its hands up and acquit. Rather, we permit the jury to make rational inferences based on the other evidence before it. *See Smith*, 374 Md. at

30

534; *Taylor*, 346 Md. at 458.

Concerning the bottle of Fireball liquor found near the vehicle, the jury, again, could have made any number of choices. It could have discounted it entirely. The bottle was found near the vehicle, but Trooper Bynum testified that he otherwise did not see it fall out of the vehicle when he was conducting an inventory search. And there also were numerous other individuals on the scene to whom it could have belonged. But the jury also could have inferred a number of facts from the presence of the Fireball. The jury could have inferred that Mr. Palmer consumed the Fireball before, during, or after driving and that the bottle somehow found its way outside the vehicle after the accident. Yet still, the jury could have inferred that the bottle belonged to Mr. Palmer but that he did not consume it until after the accident. Again, any one of these would be a rational inference, all of which would have been for the jury to decide. We decline to adopt a position, like Missouri's, that an intoxicated defendant's access to alcohol at the scene of an accident where the defendant was not observed operating a motor vehicle automatically is a fact that cuts in favor of a defendant because the only rational inference that can be drawn is that the individual began consuming alcohol after the accident occurred.

We do not ask jurors to discard their common sense when they enter the courthouse doors. The jury heard and saw evidence concerning the extent of Mr. Palmer's intoxication. And the jury was free to draw on its common sense and everyday lived experiences regarding the severity of Mr. Palmer's level of intoxication, as well as the delayed effects of alcohol consumption. *See Moon*, 291 Md. at 474 (explaining in lay terms how, "[a]s time passes[,] the alcohol in the blood disappears"); *White v. State*, 142

31

Md. App. 535, 548 (2002) ("[I]ntoxication can also be proven by other evidence from which the jury could infer that a defendant was intoxicated, such as evidence of a defendant's demeanor at the time of the stop." (citing *Brooks v. State*, 41 Md. App. 123, 128–29 (1979))); *see also State v. Salazar*, 844 P.2d 566, 574–75 (Ariz. 1992) (in banc) ("[T]he effect of alcohol intoxication is an area within the common knowledge and experience of the jury, and therefore, no expert testimony is needed to assist the trier of fact." (citation modified)). The jury here found that Mr. Palmer drove the vehicle and did so in a negligent manner. Neither of those findings were challenged in this Court. The jury, therefore, was presented with two options concerning the alcohol-related charges: Mr. Palmer either (1) drove the vehicle while intoxicated, resulting in the accident or (2) was sober when he negligently struck an inanimate object and then decided to consume alcohol while either waiting for a tow truck or to inflate a flat tire.

It is not beyond the realm of a permissible rational inference for the jury to infer that the negligent driving and accident were, in fact, caused by Mr. Palmer's intoxication. The jury equally, and just as rationally, could have inferred that although Mr. Palmer crashed the vehicle, he did not consume any alcohol until after the accident. But when presented with permissible and competing rational inferences, the choice of which to accept belongs to the jury. *See Smith*, 415 Md. at 185 ("[W]e do not . . . attempt to resolve any conflicts in the evidence."). And, at this stage, inferences are viewed in the State's favor.[12]

---

[12] Mr. Palmer argues that there are myriad explanations for the accident, such as "getting a flat tire, texting, swerving to avoid hitting an animal, or falling asleep[.]" True,

Thus, we believe that there was sufficient evidence for the jury to rationally infer that Mr. Palmer drove the vehicle while intoxicated. Our holding is consistent with our case law.

In *Atkinson v. State*, we reversed the defendant's conviction for driving under the influence, when "drive" was defined to mean, among other things, that the individual was in actual physical control of the vehicle. 331 Md. 199, 201–02 (1993). There the defendant was observed by law enforcement to be inside his vehicle, "slumped over in the driver's seat with the keys in the ignition and [the] engine off." *Id.* at 203. The car was parked on the righthand shoulder of the road without any indication that there had been an accident. *Id.* at 202–03. Law enforcement opened the door and shook the defendant awake; law enforcement observed several indicia of intoxication including slurred speech, bloodshot eyes, and an odor of alcohol. *Id.* at 203–04. Law enforcement requested the defendant to step out and complete standard field sobriety tests, but he refused, citing a broken toe on his right foot. *Id.* at 204. The defendant was subsequently arrested and convicted for driving under the influence of alcohol. *Id.* at 204–05.

and there may even be more innocent explanations than those that he suggests. But the State's burden to secure a criminal conviction is not to negate every conceivable possible explanation for a set of events aside from the criminal activity that the State is attempting to prove. *See Carroll*, 428 Md. at 685–86 n.1, 690 (holding that the court's use of the pattern jury instruction on the State's burden of proof, which notes that the State is not "required to negate every conceivable circumstance of innocence[,]" in conjunction with the instruction that the State "must prove" each offense was sufficient to adequately instruct the jury). Were we to hold otherwise, we would impermissibly resurrect the since-abandoned "reasonable hypothesis of innocence" standard. *See Allen*, 402 Md. at 76–77. It, thus, is irrelevant that there might be some other innocent explanations for Mr. Palmer's crashing of the vehicle. If crashing the vehicle due to intoxication is a permissible inference that the jury may draw, which, in this case, it was, the State need do no more, and it rests with the jury to draw and believe that inference.

On appeal, we addressed whether the defendant "was in 'actual physical control' of his vehicle while under the influence of alcohol[.]" *Id.* at 205. We held that "a person is in 'actual physical control' if the person is presently exercising or is imminently likely to exercise 'restraining or directing influence' over a motor vehicle while in an intoxicated condition." *Id.* at 215. We provided a non-exhaustive list of factors to consider in such cases, including (1) "whether or not the vehicle's engine is running, or the ignition on;" (2) "where and in what position the person is found in the vehicle;" (3) "whether the person is awake or asleep;" (4) "where the vehicle's ignition key is located;" (5) "whether the vehicle's headlights are on;" and (6) "whether the vehicle is located in the roadway or is legally parked." *Id.* at 216. No one factor is dispositive, and courts must keep "an eye towards whether there is in fact present or imminent exercise of control over the vehicle or, instead, whether the vehicle is merely being used as a stationary shelter." *Id.*

Applying that test to the facts in *Atkinson*, we held that there was reasonable doubt that the defendant was in actual physical control of the vehicle while under the influence of alcohol. *Id.* at 217. For our purposes, the most important part of our holding in *Atkinson* is the cautionary language that followed:

> It is important to bear in mind that a defendant who is not in "actual physical control" of the vehicle at the time of apprehension will not necessarily escape arrest and prosecution for a drunk driving offense. A person may also be convicted [for such an offense] if it can be determined beyond a reasonable doubt that before being apprehended he or she has actually driven, operated, or moved the vehicle while under the influence.

\*       \*       \*

34

In the instant case, had there been evidence to establish that [the defendant] had driven prior to his apprehension, he might properly have been convicted—not because of what he was doing when the officer arrived on the scene, but because of what the factfinder could have inferred he had done previously, *i.e.,* actually drive, operate, or move his vehicle while intoxicated. While many forms of circumstantial evidence potentially could have le[]d to this conclusion, no such evidence was adduced in [this] case. There is no evidence that [the defendant] did anything but climb into his vehicle, put the key in the ignition, and go to sleep.

*Id.* at 218–19. Our cautionary point in *Atkinson* contemplates Mr. Palmer's exact scenario.

As the Appellate Court correctly concluded in this case, "the totality of the evidence, viewed in the light most favorable to the State, was sufficient to support a reasonable inference that [Mr. Palmer] had driven the vehicle to the place it came to rest off the roadway." *Palmer*, 266 Md. App. at 710. Not only was there sufficient circumstantial evidence that Mr. Palmer drove the vehicle, but that he did so in a negligent manner. *Id.* at 725 ("Considering all the evidence presented at trial, we conclude that the evidence was sufficient to sustain [Mr. Palmer's] conviction for negligent driving."). When coupled with the fact that the jury was presented with evidence as to Mr. Palmer's intoxication, it is a small ask to have it infer that the negligent driving was due to that intoxication, and we specifically contemplated such a scenario in *Atkinson*. *See* 331 Md. at 218–19.

And the Appellate Court has correctly applied these principles in the past. In *Gore*, the Appellate Court held that there was sufficient evidence to sustain the defendant's conviction for driving while intoxicated. 74 Md. App. at 144. There, law enforcement encountered the defendant passed out behind the wheel of a vehicle in a parking lot. *Id.*

35

While the engine of the vehicle was off, the keys were placed in the ignition in the "on" position, dashboard lights were illuminated, the hood of the vehicle was warm, and the gear selector was placed in the "drive" position. *Id*. Upon interacting with the defendant, law enforcement observed traditional indicia of intoxication, and the defendant confirmed that he had "two vodkas." *Id.* at 145. Law enforcement confirmed that it had not seen the defendant drive, nor did they know how long the car had been in the parking lot, nor how it came to be there, nor when the defendant consumed the alcohol. *Id.* The Appellate Court, noting that "[i]t is axiomatic that the necessary rational inferences to support a finding of guilt beyond a reasonable doubt may be drawn by the trier of fact from circumstantial evidence[,]" held that the evidence produced was sufficient for a factfinder to conclude that the defendant was "driving" the vehicle as defined under the statute. *Id*. at 149–50 (citing *Finke v. State*, 56 Md. App. 450, 468–78 (1983)).

Similarly, in *Dukes*, the Appellate Court affirmed the defendant's convictions for operating a vehicle while impaired and influenced by alcohol. 178 Md. App. at 39. The facts similarly mirrored those in *Gore*: the defendant was found asleep in the car and presented traditional indicia of intoxication. *Id.* at 39–40. The vehicle was stopped in a right-turn lane with its headlights on; the vehicle keys were on the floor mat under the steering wheel. *Id.* at 39. After a bench trial, the court ruled that the defendant was in actual physical control of the vehicle and convicted him accordingly. *Id.* at 41. On appeal, the Appellate Court relied heavily on *Atkinson*. *Id.* at 43–45. In affirming the defendant's conviction, the court stated:

> Here, as the trial court reasoned, there was enough charge in the

battery to light the car's headlights, even if they were growing dim. Moreover, the court recognized that the car had been driven there. So presumably had been engaged and the engine had been running. It is not a situation where the car had been sitting for a week or so without being started. Under these circumstances, we cannot say the judge was clearly erroneous in concluding that the car was operable at the time of [the defendant's] arrest.

* * *

Here, the fact that [the defendant] was intoxicated and asleep in the driver's seat of a vehicle that was stopped *in the roadway*, with its lights on, is powerful circumstantial evidence that [the defendant] drove the vehicle to that location while intoxicated.

*Id.* at 48, 52 (citation modified).

And, more recently, in *Harding*, the Appellate Court again affirmed a conviction for driving under the influence of alcohol. 223 Md. App. at 292, 303. There, an emergency call was placed around 1:20 a.m., reporting a vehicle accident in which an individual possibly was trapped. *Id.* at 292. First responders and law enforcement arrived and noticed a vehicle that had "jumped a curb and crossed the sidewalk and had nudged into bushes that bordered a fence on the far side of the sidewalk." *Id.* at 292–93 (citation modified). The vehicle was still running and was observed to be emitting smoke and radiator fluid. *Id.* at 293. "From the raw physics of the event alone," one could tell that the vehicle had come to an abrupt stop. *Id.* First responders found the defendant in the driver's seat slumped over, and law enforcement noted that the defendant "seemed out of it[,]" "wasn't responsive," and "was intoxicated." *Id.* The defendant neither confirmed nor denied that he was the driver of the vehicle, and he displayed a rather aggressive demeanor. *Id.* at 294. The defendant refused to submit to standard field sobriety tests at

the scene and further refused a breathalyzer test at the police station. *Id.*

Although the Appellate Court devoted much time to discussing the inference of guilt the jury could have drawn based on the defendant's decision to refuse to submit to testing, *id.* at 295–300, it nevertheless noted that the "physical evidence permitting a conclusion that the [defendant] had been driving the disabled pickup truck was so bounteously sufficient that the permitted inference of the [defendant's] consciousness of guilt was completely redundant[,]" *id.* at 300. Indeed, the crux of the issue before the Appellate Court "focuse[d] exclusively on the narrow issue of whether the [defendant] had actually been driving the [vehicle] in which [first responders] found him[.]" *Id.* at 291. In that case, the emergency call "gave rise to a permitted inference that the vehicle accident had just occurred a brief time before [first responders] arrived and belie the alternate possibility that the [defendant] had been quietly sleeping in the driver's seat for some appreciable length of time." *Id.* at 303 (citation modified). Furthermore, the vehicle's location was, the Appellate Court noted, "a critical factor working against the [defendant]" because it "was not in a place where it had a lawful right to come to rest." *Id.* at 304.

*Atkinson*, *Gore*, *Dukes*, and *Harding* teach that the State's greatest hurdle in these cases is proving that the defendant drove the vehicle, as that term is defined. Once it overcomes that hurdle, the fact of the defendant's obvious and current intoxication is a fact that a factfinder can use to infer that the defendant drove that vehicle *while* intoxicated. *Atkinson* explicitly said as much. *See* 331 Md. at 218 ("[H]ad there been evidence to establish that [the defendant] had driven prior to his apprehension, he might

properly have been convicted—not because of what he was doing when the officer arrived on the scene, but because of what the factfinder could have inferred he had done previously, *i.e.*, actually drive, operate, or move his vehicle while intoxicated."). And *Gore* and *Dukes* illustrate as such, as there was no evidence in either as to how long the vehicle in question had been in the location where law enforcement discovered it. *See Gore*, 74 Md. App. at 145 (noting that the investigating officer on cross-examination specifically stated "that he had no knowledge as to how long the car had been [i]n the [parking] lot"); *Dukes*, 178 Md. App. at 39–40 (noting that law enforcement first saw the vehicle in question around 4:15 a.m. and then again roughly 30 minutes later, prompting the officer to investigate without otherwise discussing how long the vehicle had been there).

We agree with those conclusions. A known gap in time between a defendant's driving and observed state of intoxication—in most cases—does not automatically prevent the State from successfully convicting a defendant of alcohol-related driving offenses.[13] To be sure, the larger the gap in time, the more difficult it will be for the State to prove beyond a reasonable doubt that the defendant drove *while* intoxicated, and such facts can be leveraged by defense counsel on cross-examination and in closing argument. But that does not make prosecution impossible, and a jury is free to infer that a defendant drove while intoxicated—especially when it is uncontested that the jury appropriately found that a defendant drove and did so negligently.

---

[13] While there obviously will come a point where a gap in time is simply too large for the State to convict, we otherwise decline to draw a bright-line rule at what that temporal threshold might be.

The rationale advanced by the Appellate Court in this case closely mirrors the proposed rule we rejected in *Smith*. In *Smith*, the defendant sat at a table where a lit and partially consumed marijuana blunt burned in an ashtray. 415 Md. at 178. Law enforcement suspected drug activity at the residence and carried out a search of the premises, ultimately discovering a black plastic bag that contained 15 Ziploc bags of marijuana. *Id*. at 178–79. Law enforcement recovered the contraband from the pocket of a men's black leather jacket, found on the back of a chair at the table where the defendant sat. *Id*. at 179. Although the defendant claimed he did not own the jacket, and did not sit at the chair in question, a jury ultimately found the defendant guilty of illegally possessing the marijuana recovered from the jacket. *Id*. at 180.

On appeal in this Court, the defendant argued that the State did not present direct evidence that he used or possessed the marijuana, it was possible the marijuana belonged to one of the other individuals who were present in the house at the time law enforcement searched the premises, and his mere presence at the scene of a crime was insufficient evidence of his guilt. *Id*. at 188. We rejected those arguments, as it amounted to an evidentiary standard the State could never satisfy "unless the blunt was found in his hand[.]" *Id*. at 189. When we rejected this argument, we made clear that the totality of the circumstances, specifically the defendant's close proximity to the marijuana and the partially consumed blunt in the defendant's view, allowed for the jury to reasonably infer that the defendant was engaging in the mutual use and enjoyment of the marijuana. *Id*. at 200. We explained further, stating that "[i]t [was] not relevant to consider whether it also may have been reasonable to infer that [the defendant] was merely an innocent

bystander[]" as the jury reasonably inferred otherwise based on the facts before them, and that determination was the jury's to make. *Id*.

Mr. Palmer views this matter similarly to how the defendant in *Smith* viewed his circumstances, framing the issue as whether a factfinder could rationally infer he was guilty of impaired driving simply because he was found intoxicated at the scene of a single-car accident that occurred at some point within a 3.5-hour window that preceded law enforcement's observation of Mr. Palmer's intoxication. However, as in *Smith*, the jury was provided more than *just* Mr. Palmer's intoxicated presence at the scene of the accident, and the State has never advanced the theory that the jury could infer that Mr. Palmer drove while intoxicated simply because he was intoxicated near a vehicle.

A driver's apparent intoxication at the scene of an accident simply represents one piece of circumstantial evidence that the driver's intoxication caused that accident. That inference may be stronger when the accident, as it did here, involves a negligent, one-car collision with an inanimate object. We do not, however, find that this permissible inference creates a de facto rule where intoxication at the scene of an accident will always represent sufficient evidence to sustain a conviction. At the same time, where the circumstantial evidence is consistent with other facts surrounding the incident, the jury may permissibly infer that the defendant's driving and the defendant's intoxication overlapped.

**V**
**CONCLUSION**

We hold that—in all criminal cases—the appropriate standard of review when a

41

defendant challenges the sufficiency of the State's evidence is whether a rational factfinder reasonably could find the essential elements of the crime. That standard does not discriminate between direct and circumstantial evidence, and the State may rely wholly on direct evidence, wholly on circumstantial evidence, or any combination thereof. There is no category of crime where the State's burden or the type of evidence it must produce changes. Reviewing the record in this case under the appropriate framework, we conclude that the State produced sufficient evidence for a rational jury to reasonably find that Mr. Palmer violated TR §§ 21-902(a)(1)(i) and 21-902(b)(1)(i). We, therefore, reverse the judgment of the Appellate Court of Maryland.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY. RESPONDENT TO PAY COSTS IN THIS COURT AND THE APPELLATE COURT OF MARYLAND.**

Circuit Court for Somerset County
Case No. C-19-CR-23-000067
Argued: April 8, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 50

September Term, 2025

STATE OF MARYLAND

v.

MARCONI PALMER, JR.

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

Concurring Opinion by Gould, J.

Filed: July 23, 2026

I agree that the evidence was sufficient to sustain Mr. Palmer's convictions and that the Appellate Court's judgment should be reversed. I write separately because I do not read the Appellate Court's opinion as applying a heightened standard of proof for offenses based on driving while intoxicated. Thus, because the Majority's approximately 12-page analysis that such a heightened standard would have been an error is unnecessary, I concur in the judgment.

I

The Majority allows for the possibility that the Appellate Court applied a heightened standard of proof in this case based on its use of the phrase "specific evidence." The phrase "specific evidence" appears only twice in the Appellate Court's opinion. The first time, the court quotes the Missouri Court of Appeals: "when there is a significant interval of time between the time of an accident and the time that the defendant is observed to be intoxicated, the prosecution must offer specific evidence that the defendant was intoxicated at the time the defendant was driving." *Palmer v. State*, 266 Md. App. 693, 718-19 (2025) (quoting *State v. Byron*, 222 S.W.3d 338, 341 (Mo. Ct. App. 2007)). The second time, the court again quotes *Byron* and concludes that specific evidence of Mr. Palmer's intoxication while driving was insufficient. *Id.* at 722 (quoting *Byron*, 222 S.W.3d at 341). As *Byron* itself did not hold that only direct evidence would suffice, I do not believe that the Appellate Court required direct evidence here.

Read in context, the Appellate Court was simply saying that the State needed evidence specific to the issue of whether Mr. Palmer was intoxicated when he drove the car into the ditch. At the outset of its analysis, the court, relying in part on *Jackson v.*

*Virginia*, 443 U.S. 307 (1979), recited the governing standard for sufficiency of the evidence analysis as whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[,]" *Palmer*, 266 Md. App. at 707 (citation omitted), and, in the next few sentences, stated that the evidence establishing each element could be "either direct or circumstantial[.]" *Id.* (citation omitted). The court acknowledged that "Maryland has long held that there is no difference between direct and circumstantial evidence[,]" *id*. at 708 (citation omitted), and confirmed that "Maryland law does not require circumstantial evidence to refute every reasonable hypothesis of innocence[,]" *id*. at 714 n.8 (citation omitted). The court also identified the information missing from the record that would have established whether Mr. Palmer was intoxicated when he was driving—when he began drinking, how much alcohol he consumed, when his accident occurred, and when the police were dispatched to respond to his accident—all of which would be circumstantial evidence of his condition at the time of the accident. *Id*. at 722. That the Appellate Court listed the circumstantial evidence it would have credited confirms that the court was not demanding direct evidence. Because the Appellate Court did not purport to announce or apply a heightened standard, we need not explain why such a standard is contrary to Maryland law.

II

On sufficiency, I agree with the Majority's analysis and join that part of its opinion in full. Mr. Palmer drove his Kia off a dry road, through the fog line, into a ditch, and into a speed limit sign, knocking it out of the ground. *Id.* at 699-700. When the troopers arrived, he plainly appeared intoxicated. *See id.* at 701. The jury faced a straightforward question:

2

whether the State proved beyond a reasonable doubt that Mr. Palmer was intoxicated when he drove, or whether the evidence left a reasonable doubt that he was sober when he drove and somehow became drunk afterward. *See id.* at 726.

The jury saw the body-worn camera footage, which showed that Mr. Palmer was not merely impaired but conspicuously so and that he behaved erratically throughout his encounter with the police—asking Trooper Barfield his name four times in about three minutes, confusing a traffic accident with trafficking, and saying that a tow truck was coming and that he would pump up his tire and leave.

The alternative to Mr. Palmer being intoxicated while driving is that a sober Mr. Palmer knocked down a road sign, drove into a ditch, got out of the car, and said to himself: "this would be a good time to go get extremely drunk," and then proceeded to do just that. Applying their common sense, the jury was entitled to reject that scenario as implausible and conclude beyond a reasonable doubt that Mr. Palmer was intoxicated when he drove the car into the ditch.

For these reasons, I concur in the judgment.